## A95A0614. OCONEE REGIONAL MEDICAL CENTER et al. v. HAYGOOD et al.

### (458 SE2d 400)

BEASLEY, Chief Judge.

Michael Haygood, age two, fell into the Jorises' swimming pool. Michael's grandparents, the Whatleys, were neighbors of the Jorises and were caring for Michael at the time. He died ten days later.

Kevin Haygood, in both his capacity as Michael's father and as the administrator of Michael's estate, and Martha Haygood, Michael's mother, settled with the Whatleys and their insurer for $25,000 without suit. The proceeds were allocated $1,000 to the estate, which the probate court approved, and $24,000 to Michael's survivors. The release document stated that the Whatleys and their insurer were released from any further liability and that the settlement was in compromise of a disputed claim.

After the Whatley settlement, the Haygoods sued the Jorises, for negligently failing to secure entry to their pool, and Oconee, for negligently failing to respond by ambulance in a timely manner. Oconee and the Jorises moved for summary judgment, which was denied. Oconee's application for interlocutory review was granted; the Jorises have not sought appeal.

Oconee contends the release document between the Haygoods, the Whatleys, and the Whatleys' insurer operates to relieve it of liability. According to *Posey v. Medical Center-West*, 257 Ga. 55 (354 SE2d 417) (1987), the release of one joint tortfeasor does not discharge others from liability for the same harm. In clarifying the rule set forth in *Posey*, the Supreme Court stated, "[o]nly those parties *named* in the release will be discharged by that instrument." (Footnote omitted.) *Lackey v. McDowell*, 262 Ga. 185, 186 (415 SE2d 902) (1992). The only parties named in the release are the Haygoods, the Whatleys, and the insurer.

Oconee contends that this principle does not resolve the question, however, pointing to language in the release that the $25,000 "constitutes a full satisfaction and acceptance of full compensation for all of Michael Dallas Haygood's injuries and damages . . . including the full value of [his] life." It argues that this language shows the Haygoods have received full satisfaction for the injuries and to allow any further recovery would result in multiple satisfactions. In setting forth the *Posey* rule, the Supreme Court specifically stated, "[w]e adhere to the principle that plaintiff is entitled to but one satisfaction." *Posey*, supra at 59.

Posey relied heavily upon *Williams v. Physicians &c. Hosp.*, 249 Ga. 588 (292 SE2d 705) (1982), for its reasoning. In *Williams*, the Court examined the release document to determine whether it was intended to have any effect on a successive tortfeasor. As the Whatleys, Jorises, and Oconee are alleged to be successive tortfeasors, *Williams* applies.

" '[A] plaintiff should never be compelled to surrender his cause of action against any wrongdoer unless he has intentionally done so, or unless he had received such full compensation that he is no longer entitled to maintain it.' " Id. at 589. Although Oconee argues that the release demonstrates that the Haygoods have received full satisfaction and should be precluded from maintaining any further action, the inclusion of satisfaction language in the release does not necessarily demonstrate that such was the true intent of the parties, nor does it, by itself, indicate that full satisfaction has been received. "[C]ourts should look to the real intention of the parties to a general release rather than relying on an artificial conclusive presumption of law based on general, boilerplate language contained in the release. [Cit.]" Id. at 590. When a stranger to a release claims coverage under it, an explanation of the intent of the parties to the release must be sought. Id.

" ' "The fundamental rule, the rule which swallows up almost all others in construing a paper, is to give it that meaning which will best carry into effect the intent of the parties. This is the object of rules of interpretation, to discover the true intent of the parties, and in doing this we are to take the whole of (the instrument) together, and to consider this with the surrounding circumstances." [Cits.]' [Cit.] '[W]hether the plaintiff has received full satisfaction and whether the parties intended the result of their negotiations to be a complete freedom from further liability for all the [defendants], should be paramount in determining the effect of any agreement purported to operate as a release and should be inquired into whenever the problem arises in a case.' [Cit.]" *Crim v. Jones*, 204 Ga. App. 289, 290-291 (419 SE2d 130) (1992).

The release shows no indication the parties intended the $25,000 paid to be considered full compensation and satisfaction for Michael's life as to other tortfeasors, nor to produce "a complete freedom from further liability" for Oconee. The document is styled "RELEASE OF ALL CLAIMS AND INDEMNIFICATION AGREEMENT"; but it is only between the Haygoods and the Whatleys and their insurers. There is no mention of satisfaction in the title of the instrument, and the body refers to satisfaction only insofar as the named parties are concerned. The release does not name any person or entity other than the Whatleys and their insurer. The text consistently refers to the document as a "release," states it is in compromise of a claim, and

addresses its binding effect on the parties.

The portion of the release upon which Oconee focuses reads: "The undersigned further represent to the persons, firms, and corporations hereby released that the acceptance of said payment constitutes a full satisfaction and acceptance of full compensation for all of Michael Dallas Haygood's injuries and damages arising out of or related to the aforesaid occurrence or accident including the full value of the life of Michael Dallas Haygood and any and all claims which could be brought against Gene and Lynda Whatley and [their insurer] and its affiliates." The passage itself states it is a representation made from one party to another. It is written in the context of a release agreement between those parties and there is no suggestion that it is intended to be extended to any party not named.

The circumstances surrounding the release also show it was not intended to give the effect Oconee urges. The release was not an agreement between strangers; the Whatleys were Michael's grandparents. It can be inferred that the low amount of $25,000 for the child's life and injuries was accepted not because it represented the full value the Haygoods would place on Michael's life, but for other reasons such as to protect the integrity of the family relationship. It is a significant fact that $25,000 was the limit of the Whatleys' insurance policy. These considerations would support a finding that the $25,000 figure was agreed upon not as an attempt to gain a full satisfaction for the life and injuries, but only a full satisfaction *from* the grandparents and their insurer with respect to *their* liability. We cannot conclude as a matter of law that this was accepted as anything more than the contribution from Michael's grandparents practically available to be applied to an ultimate satisfaction.

Additionally, the probate court did not appear to consider the $1,000 portion of the settlement assigned to the estate to be a full satisfaction of the estate's claim. Its order allows Kevin Haygood to execute releases and settle claims specifically as to the Whatleys and their insurer. There is no mention of other parties and no suggestion that the court considered the sum to be a full satisfaction.

There is no evidence Michael was not a healthy two-year-old with a normal life expectancy. It is inferable from this alone that the parties to the release agreement did not intend it to be a "satisfaction" document as to the rest of the world. It is a reasonable inference that the parties would put a greater value on the child's life than the $25,000 recited in the document as "full value."

Finally, Oconee does not suggest that the $25,000 would, as a factual matter, be a reasonable value to place on Michael's life. Its only argument for the proposition that the parties intended the sum to be full satisfaction is the inclusion of the language in the document. The argument does not address the issue of the true intent of the parties.

There is ample evidence that the parties intended the document to provide simply a settlement between the parties and protection to the Whatleys and their insurer from further liability. Neither the language concerning satisfaction and full compensation alone, nor the language and the circumstances, establish a bar to recovery from any other party, as a matter of law, and the court did not err in denying Oconee's motion for summary judgment.

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED JUNE 14, 1995 — 

*Jones, Cork & Miller, C. Ashley Royal, W. Kerry Howell*, for appellants.

*Thomas J. O'Donnell*, for appellees.